**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO
Honorable Marcia S. Krieger**

Civil Action No. 12-cv-02808-MSK

**ALBERTA J. SUTHERLAND,**

      Plaintiff,

v.

**CAROLYN W. COLVIN, Acting Commissioner, Social Security Administration,**

      Defendant.[1]

**OPINION and ORDER**

**THIS MATTER** comes before the Court on Plaintiff Alberta J. Sutherland's appeal of the Commissioner of Social Security's final decision denying her application for Disability Insurance Benefits under Title II of the Social Security Act, 42 U.S.C. §§ 401-33. Having considered the pleadings and the record, the Court

**FINDS** and **CONCLUDES** that:

**I.     Jurisdiction**

Ms. Sutherland filed a claim for disability insurance benefits pursuant to Title II. She asserted that her disability began on November 1, 2006. After her claim was initially denied, Ms. Sutherland filed a written request for a hearing before an Administrative Law Judge ("ALJ"). This request was granted and a hearing was held on March 3, 2011.

---

[1] At the time Ms. Sutherland filed her initial appeal, Michael J. Astrue was the Commissioner of Social Security. Carolyn W. Colvin is substituted as the Defendant in this action to reflect her designation as Acting Commisioner of Social Security, effective February 14, 2013.

After the hearing, the ALJ issued a decision which found that Ms. Sutherland met the insured status requirements through December 31, 2006. Applying the five-step disability evaluation process, the Decision also found that: (1) Ms. Sutherland had not engaged in substantial gainful activity since November 1, 2006; (2) she had the following severe impairments: degenerative disk disease with sciatica status post-surgery, chronic obstructive pulmonary disease ("COPD") and alcohol abuse; (3) she did not have an impairment or combination of impairments that met or medically equaled any of the impairments listed in 20 C.F.R. Part 404, Subpt. P, Appx. 1 ("the Listings"); and (4) Ms. Sutherland had the residual functional capacity ("RFC") to perform sedentary work as defined in 20 C.F.R. 404.1567(a), but with the following additional limitations: lifting or carrying no more than 10 pounds frequently; standing and/or walking (with normal breaks) no more than 2 hours in an 8 hour workday; sitting (with normal breaks) no more than 6 hours in an 8 hour workday; no pushing or pulling with the right lower extremity; and she must have a "relatively clean" work environment, meaning low levels of pollutants. Given the above RFC, the Decision ultimately found that Ms. Sutherland was not disabled because she was capable of performing her past relevant work as a semi-conductor assembler.

The Appeals Council denied Ms. Sutherland's request for review of the Decision. Consequently, the Decision is the Commissioner's final decision for purposes of judicial review. *Krauser v. Astrue*, 638 F.3d 1324, 1327 (10th Cir. 2011). Ms. Sutherland's appeal was timely brought, and this Court exercises jurisdiction to review the Commissioner of Social Security's final decision pursuant to 42 U.S.C. § 405(g).

**II.     Material Facts**

The material facts are as follows.

Ms. Sutherland was born in 1945 and has a 12th grade education. She has worked as a semi-conductor assembler and a janitor. She suffers from degenerative disk disease in her lumbar spine, COPD and alcoholism.

**A.  Degenerative Disk Disease**

The primary source of Ms. Sutherland's functional limitations is degenerative disk disease in her lumbar spine. According to the record, Ms. Sutherland complained of lower back pain for several years prior to the asserted disability period, November 1 to December 31, 2006. In January 2005, she saw her treating physician, Dr. Noble, for back pain. Dr. Noble performed a physical exam and recorded in his notes that Ms. Sutherland experienced bilateral back pain across the L4-L5 area with intermittent pain radiating down her left leg. However, upon examination she did not experience numbness, weakness or reduced reflexes and was working eight hour days with the help of pain medication. In his notes, Dr. Noble also summarized the results of a December 2004 MRI: at L4-L5, moderate to severe spinal stenosis due to a broad based protruding disk, bilateral facet hypertrophy and bilateral intervertebral foraminal narrowing; at L5-S1, severe degenerative loss of disk height, mild spinal canal narrowing due to end plate hypertrophy, a partial laminectomy, bilateral intervertebral foraminal narrowing, compression of the exiting L5 nerve roots and broad based protruding disk and bilateral facet hypertrophy.

During the asserted disability period, Ms. Sutherland returned to Dr. Noble's office again complaining of back pain. On November 14, 2006, she saw Linda Noble, a nurse practitioner in Dr. Noble's office. According to Ms. Noble's treatment notes, Ms. Sutherland rated her pain at

10 out of 10. When examined, Ms. Sutherland had decreased range of motion with forward flexion but had negative straight leg tests, a normal neurologic examination, equal and symmetric deep tendon reflexes, the ability to walk unassisted and no weakness to major muscle groups. On November 20, 2006, Dr. Noble himself examined Ms. Sutherland. In his treatment notes, he wrote that she had pain in the right sciatic notch radiating down the L4 distribution, as well as numbness of the lower leg and no patellar reflex on the right. Based on this examination and a prior MRI, Dr. Noble's assessment was lower back pain with L4 right sciatica.

Ms. Sutherland also saw Dr. Dunn in November 2006 for back pain. During his examination, Ms. Sutherland had positive straight leg tests and tenderness to palpation of the sacroiliac joint and iliac crest on the right. However, she did not experience numbness, tingling, paresthesia, weakness, sciatic notch tenderness or reduced tendon reflexes. Dr. Dunn's impression was lower back pain with radicular symptoms on the right. Contemporaneous X-rays showed degenerative changes at the lumbosacral junction, including five lumbar vertebrae with mild levoscoliosis.

An MRI of Ms. Sutherland's lumbar spine taken in late November 2006 showed the following: the L1-L2 and L2-L3 levels were normal; the L3-L4 level had mild degenerative changes, spinal canal narrowing and a focal right paracentral disk extrusion extending inferiorly from the disk space by nearly 1.5 cm which likely displaced the transiting right L4 nerve root; the L4-L5 level had diffuse disk bulging, moderately severe narrowing of the interior of each neural foramen and moderately severe degenerative changes of the facet joints that resulted in 30% narrowing; the L5-S1 level had mild disk bulging, mildly severe facet joint degeneration and mild to markedly severe narrowing of the interior aspect of each neural foramen.

Ms. Sutherland continued to receive periodic treatment for her back pain after December 2006. In July of 2007 she saw Dr. Noble for low back pain. Although she had pain over her left sciatic notch along with sciatic radiation down the L-5 distribution, she had no pain over her spinous process or her sacroiliac joints and had a normal motor exam for her lower extremities with normal deep tendon reflexes. In May and September 2008 Dr. Noble wrote that Ms. Sutherland had lower back pain with some numbness in her thighs. According to treatment notes from August 2009, January 2010 and February 2010, Ms. Sutherland continued to complain of lower back pain. She complained of joint stiffness and muscle weakness in February 2010 and limited joint motion in March 2010. However, in March 2010 she also had two normal musculoskeletal examinations performed by Dr. Noble. In May 2010 she was tender in the lumbar area over the spinous process and perilumbar area. Additionally, she had some paresthesia in the L5 distribution of the left thigh. Two months later she complained of lower back pain, stiffness and leg numbness. However, in contemporaneous treatment notes Dr. Noble wrote that she experienced no leg weakness and had a normal motor examination. Finally, an August 2010 x-ray of Ms. Sutherland's lumbar spine indicated a 5% anterolisthesis of the L3 on the L4 as well as severe disk space narrowing and facet arthropathy at L2-L3, L3-L4, L4-L5 and L5-S1. Dr. Hocate, a radiologist, reviewed these x-rays and concluded that Ms. Sutherland had severe degenerative disk disease characterized with grade 1 spondylolisthesis of the L3 vertebrae on the L4 vertebrae secondary to facet arthropathy.

In several instances during her treatment with Dr. Noble, Ms. Sutherland also described various activities of daily living. For example, in September 2009, she told Dr. Noble that she suffered a bug bite while she had been working in her garden pulling weeds (Exhibit 5F, page 12). In June 2010, Ms. Sutherland told Dr. Noble that she had fallen into her rose bushes from a

2-3 foot ledge after she attempted to climb a short distance up to a bird feeder (Exhibit 13F, page 19).

### B. Dr. Noble's Opinions

Based on his treatment of Ms. Sutherland, Dr. Noble wrote several opinions regarding her medical condition and functional limitations. In November 2010 he completed a Physical RFC Questionnaire in which he outlined the following limitations: Ms. Sutherland was able to walk no more than 2 blocks at a time, sit 20 minutes at a time and stand 5 minutes at a time; she was able to sit, stand and walk for no more than 2 hours total per 8 hour workday; she must walk around every 20 minutes, walking 10 minutes each time; she can only work at a job in which shifting positions at will is allowed; she must be able to take unscheduled 10 minute breaks every half hour throughout the workday; she was able to lift no more than 10 pounds occasionally; and she should never stoop or crouch and rarely twist and climb ladders or stairs. Finally, Dr. Noble concluded that Ms. Sutherland was unable to work.

Dr. Noble's November 2010 opinion was followed by two more opinions. In March 2011, he completed a Listing Questionnaire. In this document, he wrote that Ms. Sutherland suffered from lumbar spondylosis with stenosis and that this impairment matched Listing 1.04 – Disorders of the Spine. In a July 2011 Letter, Dr. Noble simply stated that Ms. Sutherland was unable to work due to low back pain caused by lumbar spondylosis with stenosis. That same month, Dr. Noble amended his November 2010 opinion, adding a hand-written note stating that Ms. Sutherland's limitations began in November 2006, during the relevant disability period.

### III.    Issues Presented

Ms. Sutherland raises three challenges to the Commissioner's Decision: (1) At Step 3, the ALJ failed to properly evaluate Ms. Sutherland's spine impairments and whether these

impairments met or medically equaled a listed impairment; (2) the ALJ failed to properly evaluate the longitudinal medical evidence, including Dr. Noble's opinions; and (3) the ALJ's evaluation of Ms. Sutherland's credibility was not supported by substantial evidence. Although the Court finds no error in the Decision's Step 3 analysis, the Decision did not give sufficient reasons for the limited weight given Dr. Noble's opinions. Because the ALJ's evaluation of Dr. Noble's opinion on remand may affect subsequent findings, the Court does not address Ms. Sutherland's final challenge.

## IV. Standard of Review

Judicial review of the Commissioner of Social Security's determination that a claimant is not disabled within the meaning of the Social Security Act is limited to determining whether the Commissioner applied the correct legal standard and whether the decision is supported by substantial evidence. *Watkins v. Barnhart*, 350 F.3d 1297, 1299 (10th Cir. 2003); 42 U.S.C. § 405(g). "Substantial evidence is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion. It requires more than a scintilla, but less than a preponderance. *Lax v. Astrue*, 489 F.3d 1080, 1084 (10th Cir. 2007). On appeal, a reviewing court's job is neither to "reweigh the evidence nor substitute our judgment for that of the agency." *Branum v. Barnhart*, 385 f.3d 1268, 1270, 105 Fed. Appx. 990 (10th Cir 2004) (*quoting Casias v. Sec'y of Health & Human Servs.*, 933 F.2d 799, 800 (10th Cir. 1991)). The evidence relevant to a social security claim is the evidence after the alleged onset date and before the expiration of a claimant's insured status. *Miller v. Barnhart*, 175 Fed.Appx. 952 (10th Cir. 2006). However, "evidence bearing upon an applicant's condition subsequent to the date upon which the earning requirement was last met is pertinent evidence in that it may disclose the severity and continuity of impairments existing before the earning requirement date or may identify additional

impairments which could reasonably be presumed to have been present and to have imposed limitations as of the earning requirement date." *Miller v. Chater*, 99 F.3d 972, 977 (10th Cir. 1996) (citation omitted).

At Step 3, the claimant bears the burden of showing that one or more impairments matches a listed impairment. *Lax v. Astrue*, 489 F.3d 1080, 1085 (10th Cir. 2007). The claimant must provide specific medical findings that support each of the various requisite criteria for the listed impairment. *Id*. "For a claimant to show that [her] impairment matches a listing, it must meet *all* of the specified medical criteria. An impairment that manifests only some of those criteria, no matter how severely, does not qualify. *Sullivan v. Zebley*, 493 U.S. 521, 530, 110 S.Ct. 885, 107 L.Ed.2d 967 (1990).

When evaluating medical opinions, a treating physician's opinion must be given controlling weight if it is "well-supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with the other substantial evidence in [the] case record." 20 C.F.R. § 404.1527(c)(2). The ALJ must give specific and legitimate reasons to reject a treating physician's opinion or give it less than controlling weight. *Drapeau v. Massanari*, 255 F.3d 1211 (10th Cir. 2001). Even if a treating physician's opinion is not entitled to controlling weight, it is entitled to deference and must be weighed using the following factors:

> 1) the length of the treatment relationship and the frequency of examination;
> 2) the nature and extent of the treatment relationship, including the treatment provided and the kind of examination or testing performed; 3) the degree to which the physician's opinion is supported by relevant evidence; 4) consistency between the opinion and the record as a whole; 5) whether or not the physician is a specialist in the area upon which an opinion is rendered; and 6) other factors brought to the ALJ's attention which tend to support or contradict the opinion.

*Watkins*, 350 F.3d at 1300-01 (citation omitted); 20 C.F.R. § 404.1527.

Having considered these factors, the ALJ must give good reasons in the decision for the weight assigned to a treating source's opinion. *Id*. The ALJ is not required to explicitly discuss all the factors outlined in 20 C.F.R. § 404.1527. *Oldham v. Astrue*, 509 F.3d 1254, 1258 (10th Cir. 2007). However, the reasons the ALJ sets forth must be sufficiently specific to make clear to subsequent reviewers the weight the ALJ gave to the treating source's medical opinions and the reason for that weight. *Watkins*, 350 F.3d at 1301.

## V.   Discussion

In evaluating Ms. Sutherland's challenges to the Decision, the Court is mindful of the limited disability period in this case, November 1 to December 31 of 2006. While evidence from before or after this time period may provide some insight into the longitudinal nature of Ms. Sutherland's impairments, it is the evidence stemming from within this period that is most relevant to determining whether Ms. Sutherland was disabled.

### A.  Step 3

Turning to Ms. Sutherland's first challenge, the Court concurs with the Decision's Step 3 finding that Ms. Sutherland's degenerative disk disease did not meet a listed impairment. Although Ms. Sutherland cites to evidence from 2005 to 2011 in her Opening Brief, a comparison of the medical evidence from the relevant disability period with the criteria found in Listings 1.04A and C shows that Ms. Sutherland's degenerative disk disease did not meet either Listing.

Listing 1.04 reads:

Disorders of the spine (e.g., herniated nucleus pulposus, spinal arachnoiditis, spinal stenosis, osteoarthritis, degenerative disk disease, facet arthritis, vertebral fracture) resulting in compromise of a nerve root (including cauda equine) or the spinal cord.  With:

>A. Evidence of nerve root compression characterized by neuro-anatomic distribution of pain, limitation of motion of the spine, motor loss (atrophy with associated muscle weakness or muscle weakness) accompanied by sensory or reflex loss and, if there is involvement of the lower back, positive straight-leg raising test (sitting and supine);
>or…
>
>C. Lumbar spinal stenosis resulting in pseudoclaudication, established by findings on appropriate medically acceptable imaging, manifested by chronic nonradicular pain and weakness, and resulting in inability to ambulate effectively, as defined in 1.00B2b.

In order to match a Listing, a claimant's impairment must meet all of the specified medical criteria outlined in the Listing. *Zebley*, 493 U.S. at 530. The medical evidence shows that Ms. Sutherland did not meet all of the criteria outlined above. As explained in the Decision, both Dr. Dunn and Dr. Noble wrote in November 2006 treatment notes that Ms. Sutherland did not experience weakness in her lower extremities or major muscle groups as a result of her degenerative disk disease. This is one of the explicit criteria in Listing 1.04A. Similarly, although MRI's of Ms. Sutherland's lumbar spine indicated spinal stenosis, she did not exhibit weakness or an inability to ambulate effectively during the relevant disability period, as required in Listing 1.04C. Furthermore, there are no medical findings from the disability period that are of equal medical significance to the missing criteria. *See* 20 C.F.R. § 404.1526(b)(1). Given the medical evidence, substantial evidence supports the Decision's finding that Ms. Sutherland degenerative disk disease did not meet Listings 1.04A or C.[2]

---

[2] Ms. Sutherland argues in her Opening Brief that the ALJ erred by not obtaining a medical expert's opinion, as required in the Commissioner's Hearings, Appeals and Litigation Manual ("HALLEX"). HALLEX section I-2-5-34 does require the ALJ to obtain a medical expert's opinion "[w]hen the ALJ is considering a finding that the claimant's impairment(s) medically equals a medical listing." However, Ms. Sutherland has not explained how this error prejudiced her. Given the nature of the medical evidence, which makes it clear that her degenerative disk disease does not meet or medically equal the criteria for Listings 1.04A or C, the Court finds that she suffered no prejudice despite the ALJ's failure to obtain a medical expert. *See Butterick v. Astrue*, 430 Fed.Appx. 665, 668-69 (10th Cir. 2011) (court declined to grant relief despite ALJ's failure to follow HALLEX provisions because claimant did not show prejudice).

### B. Dr. Noble's Opinions:

The Decision found that Dr. Noble's opinions were entitled to limited weight for several reasons.[3] Dr. Noble's March 2011 opinion was given limited weight because he did not explain why Ms. Sutherland's impairments met or equaled a Listing and his treatment records did not support such a conclusion.  As for Dr. Noble's November 2010 opinion, the Decision found that it was not clear whether this opinion applied to the disability period, Dr. Noble's treatment records from before and after the disability period did not support his opinion and Ms. Sutherlands' descriptions of her activities were inconsistent with his opinion.  Ms. Sutherland argues that the ALJ improperly substituted Dr. Noble's opinion with a personal judgment, her daily activities were not inconsistent with her asserted limitations and Dr. Noble specifically noted that his opinion applied to the disability period.

Turning to Dr. Noble's March 2011 opinion, substantial evidence supports the Decision's finding that this opinion warranted limited weight.  As explained above, the medical evidence shows that Ms. Sutherland's degenerative disk disease does not meet or medically equal the criteria outlined in Listings 1.04A or C.

The Decision also gave limited weight to Dr. Noble's November 2010 opinion for several reasons.  First, the ALJ found that it was not clear whether the opinion applied to the disability period.  However, in Exhibit 16F, Dr. Noble amended his November 2010 opinion to specifically apply to the disability period.  Although Dr. Noble made this amendment after the Decision was issued, this amended opinion was submitted to the Appeals Council, which was obligated to

---

[3] The Decision only addressed two of Dr. Noble's three opinions.  The third opinion, from July 2011, was added to the record after the Decision was issued and is simply a statement that Ms. Sutherland was disabled due to lumbar spondylosis.  Although the Court reverses and remands this case for further consideration, this third opinion has little import as the ultimate issue of disability is an issue reserved for the Commissioner.  20 C.F.R. § 404.1527(d).

consider this evidence when determining Ms. Sutherland's disability. *See* 20 C.F.R. § 404.976. Furthermore, if there was ambiguity about the time period to which Dr. Noble's opinion applied, Dr. Noble should have been contacted for clarification, particularly as Dr. Noble's opinion was the only medical opinion in the record.[4]

The Decision also gave little weight to Dr. Noble's November 2010 opinion because it was contradicted by certain treatment notes both before and after the disability window. The Decision points to an inconsistency between Dr. Noble's opinion that "the claimant can only sit 20 minutes at one time and stand 5 minutes at one time" with treatment records that reflect Ms. Sutherland's complaints of intractable pain but report no neurological compromise. This Court fails to see an inconsistency. Dr. Noble's opinion finds no muscle atrophy, weakness or reflex changes, but he describes chronic, intense low back pain, sciatic pain in Ms. Sutherland's leg, muscle spasm, and intense lumbar tenderness that created sufficient pain to "often" interfere with Ms. Sutherland's attention and concentration, required her to frequently shift positions and precluded sitting and standing for extensive periods of time. It appears that the restrictions are tied directly to the pain reported in the treatment notes caused by a spinal impairment. Although neurological impairment is required to find a disability based on the Listings, it is not necessary to support Dr. Noble's opinion. Thus, the treatment records and the opinion are not necessarily inconsistent and this rationale does not justify discounting Dr. Noble's opinion.

The final basis for discounting Dr. Noble's opinion is that is inconsistent with Ms. Sutherland's description of her activities found in Exhibits 5F, page 12, and 13F, page 19. The Court observes that these descriptions were written well after the relevant disability period, and

---

[4] At the time the Decision was issued, § 404.1512(e) required an ALJ to seek additional evidence or clarification from a medical source when faced with a conflict or ambiguity that required resolution. *See Kilpatrick v. Astrue*, 502 Fed.Appx. 801, 805 (10th Cir. 2012) (Not selected for publication in the Federal Reporter).

12

the Decision did not explain how Ms. Sutherland's activities years after the disability period are pertinent to her condition at that time.  More important, however, is that the ALJ inappropriately considered Ms. Sutherland's activities in assessing Dr. Noble's medical opinion.  There is no doubt that Ms. Sutherland's activities bear upon the severity and intensity of her subjective complaints of pain, but in this case they are not a basis for rejecting a medical opinion, as the Decision did not explain how occasionally pulling weeds or climbing a 2-3 foot ledge were inconsistent with Dr. Noble's opinion.  *See e.g. Fuller v. Astrue*, 766 F.Supp.2d 1149 (D.Kan. 2011).   Because the Decision did not give sufficient reasons for the limited weight given Dr. Noble's opinion, reversal and remand is necessary for further proceedings consistent with the above analysis.

For the forgoing reasons, the Commissioner of Social Security's decision is **REVERSED** and **REMANDED.**  The Clerk shall enter a Judgment in accordance herewith.

DATED this 4th day of November, 2013.

                                                                         **BY THE COURT:**

                                                                         Marcia S. Krieger
                                                                         United States District Judge